# Martin v. The State.

### Indictment for Selling Liquor without License.

1. *Retailing is one offence; engaging in the business of retailing another.* Our statutes carefully distinguish between the two offences of retailing spirituous liquors without license, and engaging in the business of retailing without license under the revenue law. Under the former, a single act constitutes the offence; under the latter, the accused must *engage in the business* of retailing, before a conviction would be lawful.

2. *Agency of unlicensed corporation is no defence.*—It is no defence to an indictment for retailing liquor without license, that the accused acted merely as the agent of a corporation, unless it had been properly licensed.

[Martin v. The State.]

3. *It is no defence that corporation sold liquor only to its members.*—Nor is it a defence that the accused was merely the agent of a corporation which owned the liquor and the bar where it was sold; that no one but members or stockholders, or persons specially invited, could gain admission to the room; and that liquor was sold to none but members, and the money paid went into the treasury of the corporation.

4. *Such a sale is indictable.*—By such a sale, the absolute property in the liquor which belonged to the corporation is transferred for a valuable consideration to another person, and such sale without a license is an indictable offence.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The defendant was indicted for retailing liquor without license. He was employed as an agent or employee of the Standard Club, which was organized in the city of Montgomery, and incorporated under the general laws of the State, for literary and social purposes. It was governed by a constitution and by-laws, and occupied three rooms in the second and third stories of a building in the city of Montgomery. According to its laws, only the members, or persons specially invited, could enter the premises of the club, or be present at its meetings. A record of the visitors was kept, and nobody residing in the city could be admitted upon invitation more than once.

Persons could pass readily from one room of the club to another. In the second story of the building, one of its rooms was used as a bar-room, in which "spirituous liquors, that had been purchased with the funds of the club, were sold only to the members of the club." The money paid for liquor was deposited in the common fund, and was spent only to replenish the stock of liquors-for the use of the club. No visitor, or person not a member of the club, was permitted to buy or pay for liquor at its bar-room. The liquor was sold as above stated in quantities less than a quart, and was drank upon the premises.

The court charged the jury, "That the incorporation, the constitution nor by-laws of the Standard Club, nor any thing in its association, conferred upon said association the right to retail or sell spirituous or vinous liquors in less quantities than a quart, without first obtaining a license.

2. "That the spirituous or vinous liquors purchased with the funds of the incorporated association, and then kept in a room for retail to the members of the association, that each sale so made to a member was a sale of an incorporated association to one of the individual incorporators; and this would be a sale in contemplation of section 3618 of the Revised Code, and if carried on without having obtained a license therefor, would be a violation of said section.

3. "If the jury are satisfied, beyond a reasonable doubt, from the evidence, that the defendant, in the county of Montgomery, and within twelve months before the finding of the indictment, sold spirituous or vinous liquors in less quantities than a quart to members of the Standard Club, without having obtained any license therefor, he is guilty as charged in the indictment; and this would be so, although he may not have sold to any other person except to members of the club."

To each of these charges the defendant separately excepted.

RICE, JONES & WILEY, and CLOPTON, HERBERT & CHAMBERS, for appellant.

JOHN W. A. SANFORD, Attorney-General, *contra*.

STONE, J.—The present indictment was found and tried in July, 1877, under section 3618 of the Revised Code. The indictment is in the exact language of form 30 of that Code for retailing spirituous liquors without license, and is good and sufficient under that statute.

Our statutes have carefully discriminated between the two offences—one for " retailing spirituous liquors without license," under section 3618, and the other under the clause of the revenue law which forbids the " engaging in the business " of retailing without a license. Under the one, a conviction may be had for a single offence. Under the other, it is held that the accused, to be guilty, must engage in the business of retailing. "The term business, as here used, is the synonym of employment, signifying that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit."—See *Mulvey v. The State*, 43 Ala. 316 ; *Lillensteine v. The State*, 46 Ala. 498 ; *Campbell v. The State*, 46 Ala. 116 ; *Hafter v. The State*, 51 Ala. 37 ; *Weil v. The State*, 52 Ala. 19.

In the present case, the sale, if it be a sale, was made by the agent of a corporation to one or more of the stockholders, or members. In such case, if it was an offence in the corporation to sell, it was an indictable offence in the agent by whom the act was done. An agent can not justify an act prohibited by law, by showing he was only carrying out the will of a principal, unless that principal had authority to do the act complained of.— *Winter v. The State*, 30 Ala. 22.

A sale may be defined to be a transfer of ownership from one person to another, upon a valuable consideration paid or

[Johnson v. The State.]

promised. In Benjamin on Sales, § 1, it is said : " To consti-
tute a valid sale, there must be a concurrence of the follow-
ing elements, viz : *First,* parties competent to contract; *sec-
ond,* mutual assent; *third,* a thing, the absolute or general
property in which is transferred from the seller to the buyer ;
*fourth,* a price in money paid or promised. . . The third
essential is, that there should be a transfer of the absolute
or general property in the thing sold." Whenever the own-
ership is changed, this essential of the contract is complied
with.

In the present case, there can be no question that the own-
ership was changed. The spirituous or vinous liquors were
the property of the corporation. By the sale they became
the property of an individual, for a valuable consideration
paid by the individual member to the corporation aggregate.

The ruling of the City Court was free from error, and its
judgment is affirmed.