## STATE v. FRED T. LOCKYEAR.

*Liquors—Local Option—Prohibition—Sale.*

A number of persons in the city of Raleigh, in 1885, organized a club, for social and literary purposes, and became duly incorporated under the general law. Incidental to the main purposes of the organization, the members, but no other persons, were permitted to purchase from the defendant, its steward, meals, cigars and liquors, which were furnished by the club at a price fixed by its officers, sufficient to cover the cost, but not for the purpose of profit. In 1886, an election was in Raleigh township, under the Local Option Act, at which a majority of the votes were cast for prohibition. *Held*,

1. That the furnishing liquors to the members of the club under these circumstances was a sale.

2. That such sale was in violation of the Local Option Act, and the defendant was guilty of a misdemeanor.

(*McBryde* v. *Patterson*, 78 N. C., 412; *State* v. *Tyler*, 85 N. C., 569; *State* v. *Hazell*, at this term, cited and approved).

INDICTMENT, tried before *Philips, Judge*, at July Criminal Term, 1886, of WAKE Superior Court.

The facts fully appear in the opinion.

The defendant appealed.

*Messrs. Geo. V. Strong* and *J. H. Flemming*, for the State.
*Messrs. Charles M. Busbee* and *R. H. Battle*, for the defendant.

SMITH, C. J. The defendant is indicted for selling spirituous liquor in the township of Raleigh, in violation of §3116 of *The Code*, and upon the trial of his plea of not guilty, the jury in a special verdict find as follows:

That at an election regularly called and held in Raleigh Township, Wake county, on the first Monday in June, 1886, under the provisions of chapter 32, volume 2, of *The Code*, to ascertain whether spirituous liquors might be sold in said

township, a majority of the qualified voters of said township cast votes on which was written the word "Prohibition," and the result of said election was in favor of prohibition, and the same was duly declared on the second day after said election by the authorities duly empowered so to do; and that no election has since been held reversing said election.

2. That the defendant is an employé and steward of an organization existing in the city of Raleigh called "The Capital Club," and in that name duly incorporated under the general law, in 1885, for literary and social purposes.

3. That the said organization has nearly one hundred resident members, the full membership being limited to one hundred and twenty-five, and a few non-resident members. Under the constitution and laws of said Capital Club, no person can gain admittance to the rooms of said club, except the members thereof, or such friends of the members as live outside of Raleigh township, and are especially invited and introduced in the club; and that the leading magazines and papers are kept in the reading room of said club; and while there are no lodging rooms in the club except for its servants, some of its members spend a large portion of their time there daily.

4. That among other things, and incidental to the main purpose of the organization, the club furnishes refreshments to its members, such as liquors, cigars and meals, for their convenience and accommodation, and a small stock of spirituous liquors, wines and beer, is kept on hand and furnished to the members at a price fixed by the house committee of the same, and intended to be just sufficient to cover the cost; that the object of this is not to make profit upon the liquors, wines and beer so furnished, and the price at which they are dispensed does not cover their cost and the expenses attendant upon keeping and serving the same, and part of the initiation fees and monthly dues of the members have to be applied to that purpose—to pay the said cost and expenses.

5. That it is one of the objects of the club to entertain strangers who may visit the city of Raleigh.

6. That no person other than members, can obtain any liquor, wine or beer or other beverage or refreshments in or from the club.

7. That the defendant, as steward of the club, furnishes spirituous liquors, wine and beer to the members of the club, in quantities less than a quart, for which he receives prices fixed by the house committee.

8. That on the 10th day of July, 1886, the defendant, as such steward, delivered spirituous liquors to a member of the club, being a person to the jurors unknown, and received the price fixed therefor from said member, and that the said delivery and payment were in the club house.

Upon the said facts, if the Court be of opinion that the defendant is guilty, the jury find him guilty; but if the Court be of the opinion that the defendant is not guilty, the jury find him not guilty.

The Court adjudged the defendant not guilty, and the State appealed.

The section under which the indictment is framed, is very positive and peremptory in its terms. It declares when such is the result of the popular vote, favoring prohibition, that "then and in that case it shall not be lawful for the Board of Commissioners to license the sale of spirituous liquors, or for any person to sell any spirituous liquors within such county, town or township" until another and reversing election shall be held, "and if any person shall sell any spirituous liquor within such territory as specified," such person offending shall be guilty of a misdemeanor.

There can be no question that in a strict legal sense, the transaction described in the verdict is a sale of spirituous liquors. All the elements of an executed contract are present. The corporate body, a legal entity, and the owner of the liquor, through its servant, the defendant, delivers it to

the purchaser at his call, and receives a fixed compensation in money therefor. The property in the goods passes and vests in the purchaser, and the money paid is received for and becomes the property of the club. Can there be any doubt that a corporation may make contracts and deal with a corporator, precisely as with a stranger, and valid obligations, capable of enforcement, be thus formed between the parties?

And is not this dealing with the prohibited subject directly within the terms of the statute, and does it not open the door to the mischiefs intended to be suppressed? It is not necessary that the vendor should be authorized to sell to any applicant, as an ordinary retailer. He is not allowed to sell to any one, and the fact that customers must be members of the association, does not relieve him of criminal responsibility under the mandatory statute.

This interpretation of our own enactment, finds support in adjudications upon the force and effect of similar enactments in other States, to which our attention has been called in the carefully prepared argument of counsel representing the State.

In the *State* v. *Mercer*, 32 Iowa, 405; decided in 1871, there was an organization known by the name of the "Winterset Social Club," whose object was to supply its members with intoxicating liquors as a beverage. The defendant had possession of the liquors used—sold tickets to members, and these were received in payment from them of liquors delivered and drank in defendant's house. The Court, BECK, J., delivering the opinion in reference to an error assigned in ruling out the articles of association which were offered in evidence in the Court below, says, "that if they were of the purport as claimed by the defendant's counsel in their argument, we must conclude that they were correctly excluded by the District court. They appear by the statement of counsel, to have been nothing more than

the foundations of an organization, the object and intent of which was to evade the law for the suppression of intemperance, a rather clumsy device by which the defendant and the members of the 'social club' hoped to defeat that law, and establish a place of resort where they could be supplied with intoxicating liquors for unlawful use. * * * If the liquors did not belong to the defendant, but to the 'club,' they were kept by him for the purpose of unlawful sale as the agent or employé of the club. The sale of the tickets was in fact the sale of the liquors which was for the purpose of their unlawful use."

In *Marmont* v. *State*, 48 Ind., 21; determined in 1874, a German club consisting of about forty persons, had been formed in Indianapolis for social Sunday meetings, to which each contributed a small sum on entering, and paid small monthly dues afterwards. With this fund the treasurer would purchase a keg of beer on Saturday for the association, pay for it with its moneys, and deal it out in glasses on Sunday to members at five cents, which was covered into the treasury. Chief Justice BUSKIRK, in the opinion, says: " As the keg of beer, when purchased, belonged to the society, the question arises whether the society by its agent could make a valid sale of such beer to the persons composing the society. We know of no principle of law which forbids it." It was accordingly held that the transaction amounted to a sale within the meaning of the prohibitory statute.

But the case of *Martin* v. *The State*, 59 Ala. 34; before the Supreme Court of that State in 1877, is more directly in point. The indictment was for retailing liquor without license. An association had been formed in Montgomery, and incorporated under the general law for literary and social purposes. It was governed by a constitution and by-laws, and under them only the members or persons specially invited could enter the rooms of the club. In one of the rooms was kept a bar at which spirituous liquors, bought

with the funds of the club, were sold only to members. The money paid for the liquor went into the common fund, and was used only to replenish the stock of liquors. None but members could buy or pay for liquors at the bar, and it was sold to them in quantities less than a quart, and was drank upon the premises. The Court before which the trial took place, charged the jury that if the defendant sold spirituous liquors to members of the club without license, he would be guilty; and that this would be so, although he may have sold to none others than members of the club.

In the Supreme Court, the instruction was approved, and STONE, J., for the Court, after defining the constituent elements of a sale as given in Benjamin on Sales, says: "Whenever the ownership is changed, this essential of the contract is complied with. In the present case there can be no question that the ownership was changed. The spirituous or vinous liquors were the property of the corporation. By the sale they become the property of an individual for a valuable consideration paid by the individual member to the corporation aggregate."

These rulings are confronted with others apparently looking in an opposite direction ; in which, according to defendant's contention, the true principle is to be sought, the most of them having pertinency to the present inquiry we are now to consider.

In *Seim* v. *the State*, 55 Mary., 565 ; reported in 1880, the defendants, who were the president, secretary and treasurer of a club known as the "Concordia," an association incorporated under the general law, and formed upon the basis and for purposes essentially similar to ours, were prosecuted for selling beer to a member on Sunday in violation of the statute. The Court held that "the transaction was not a sale of the beer to Springer within the intent and meaning of the act of 1866." The act mentions among the forbidden articles, besides spiritous liquors, cordials, lager beer, wine, &c., "or any

other goods, wares or merchandise whatever," and in arriving at the meaning of the enactment, the Court says it does not embrace such organizations, for if it did, a meal could not be furnished "to a member on Sunday without violating the law," inasmuch as a meal would be equally included in its prohibitory words. This case is disposed of on a construction of the statute.

In *Tennessee Club of Memphis* v. *Dwyer*, 11 Tenn., (Lea.) 452; decided in 1883, the club was formed and incorporated upon the same principles and for similar general purposes, having 200 members, and liquors of the club are furnished by an officer and servants to members who might apply for it. The defendant, clerk of the county court, issued a distress warrant against the corporation to enforce payment of a sum claimed to be due from it as a retail liquor dealer. The suit in equity was instituted to restrain the collection of the alleged debt. The sole question passed on at the hearing, was whether the complainant was under the law a liquor dealer, and liable as such to the tax. The opinion delivered by Cooke, J., reviews the cases from Alabama, Indiana and Maryland, and that of *Recard* v. *the People*, 79 Ill., 85; where the ruling was similar to that in the two first mentioned, and arrives at the same conclusion as the Court of Maryland, that the disposition of liquors among members, although upon payment of a price, is not within the purview of the statute. It declares the transaction is not a selling in itself, but a distribution of common property among its owners. The tax is put upon retail liquor dealers, as upon "other merchants," indicating, in the opinion of the Court, a legislative purpose "to impose this tax upon those who engage in the retailing of liquors as a business."

In *Commonwealth* v. *Smith*, 102 Mass., 144; the issuing of checks to the contributing members, according to the sum advanced by each, with a right to a proportionate quantity of the liquor bought with the common fund, was declared

not to be a sale, but a distribution of common property among the several owners of it.

Similar ruling is made in *Groff* v. *Evans*, 8 Queen's Bench,. Div. 373, in 1881.   FIELD, J., says:   "I think the true construction of the rule is, that the members were the joint owners of the general property in all the goods, and that the trustees, (in whom the property was vested,) were their agents. with respect to the general property in the goods, although they had other agents with respect to special property in some of the goods.  A sale involves the element of a bargain.  There was no bargain here.   There was no contract between two persons, because Foster was vendor as well as vendee."

We do not undertake to reconcile the conflicting views taken by the different Courts in regard to the character of these transactions among the members of the club within their walls, and will say that in our opinion, the case before us involves all the requisites of a legal sale, and as it is within the words of our prohibitory act, so it is within the mischief which it is intended to suppress.   Without going into the refinements which are apparent in some of the opinions, we are not able to exempt the act imputed to the defendant from the denunciation conveyed in the broad and comprehensive words, which forbid "any person to sell any spirituous liquors" within the designated locality.   Nor need we revert to the facilities which a contrary construction would afford for an evasion of the law, by the formation of such associations, which if they did not obstruct the statute in its. obvious purposes, would admit of discriminations in the community, equally adverse to its intended general operation.

We have thus given our opinion of the proper construction of the enactment in its application to cases like the present, and departed from our usual practice, to refrain from passing upon the merits of the case on appeal when not properly constituted in court, for the similar reason given in the disposition of the case of *McBryde* v *Patterson*, 78 N. C.,

412, where the same impediment was met, thát it was "the wish of the parties" that the controversy should be settled and the law declared, so that it may be observed in its integrity. *State* v. *Tyler*, 85 N. C., 569.

But the appeal must be dismissed, because no judgment discharging the defendant has been rendered so far as the record shows, and it has been too often decided, and again at this term in *State* v. *Hazell*, to need a reference, that an appeal cannot under such circumstances be entertained. The adjudication upon the special verdict is but to render it complete and perfect.

Dismissed.