THE STATE, THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, PROSECUTOR, v. THE ESSEX CLUB.

The defendant is a duly incorporated social club, which out of its common fund purchased liquors in the name of the club and kept the same for the benefit of all its members. These liquors were kept with other supplies of the club in the butler's pantry or in the cellar. There was in the club room no liquor or wine room to which the members had the liberty to resort and drink. Any member of the club in the club house could give an order to a servant or attendant in the club, or to the steward, written or verbally, at his option, and the liquor so ordered was served to him. He then at the time it was served paid for it to the steward, or signed a memorandum check which was written by the steward, and he paid for it afterwards as charged against his account, which was presented to him at the end of each month. No one but a member could pay for such liquors so ordered. A member could bring a friend to the club once or twice a year, but he could be served only while in the club house upon the order of a member, and the charges were required to be paid by the member. Except in this way, no one but a member could be admitted. This disposition of the liquor was not for the purpose of making a profit out of the member, or for the purpose of evading the law. The club had no license to sell liquor. *Held,* that this constituted a sale of liquor by the club, and that the club was liable to the penalty provided by the city ordinance for selling liquor by retail without license.

---

On *certiorari* to Essex Pleas.

Argued at June Term, 1890, before Justices DEPUE, VAN SYCKEL and REED.

For the prosecutor, *Frank C. Willcox.*

For the defendant, *Henry Young* and *John R. Emery.*

The opinion of the court was delivered by

VAN SYCKEL, J.   An action was brought before a police justice of the city of Newark to recover a penalty for the alleged illegal sale of liquors by the Essex Club, in violation of the act regulating the sale of liquors, passed March 7th, 1888.   *Pamph. L.*, p. 142.   The repeal of the said act since the commencement of the suit does not affect the proceedings. *Rev.*, p. 1121, § 4.

The allegation is, that the defendant sold liquors in violation of said act.

A supplement to the charter of the city of Newark provides: "That whoever shall sell any strong or spirituous liquors, wines, ale or beer, in quantities less than five gallons at a time, at any place within said city without having a license therefor granted as herein provided, shall forfeit and pay fifty dollars for each offence."   *Pamph. L.* 1875, p. 429, § 8.

The Police Court rendered judgment against the club for the penalty provided by the statute, which judgment was reversed by the Essex Pleas.

The judgment of the Pleas is certified into this court for review.

The facts of the case are not in dispute.   The defendant is a social club, incorporated in due form in March, 1881, under the act entitled "An act to incorporate societies or clubs for social, intellectual and recreative purposes," approved March 27th, 1878.   *Rev. Sup.*, p. 460.

It is conceded that the organization of the club was *bona fide*, for the purposes and objects provided for by the statute, and not with the purpose of evading the provisions of the charter of the city of Newark or any law of this state regulating the sale of liquors.

The evidence is, that this club out of its common fund purchases liquors in the name of the club and keeps the same for the benefit of all the members of the club. These liquors are kept with other supplies of the club in the butler's pantry or in the cellar. There is in the club room no liquor or wine room to which the members have the liberty to resort and drink. Any member of the club in the club house can give an order to a servant or attendant in the club, or to the steward, written or verbally, at his option, and the liquor so ordered will be served to him. He then at the time it is served pays for it to the steward, or signs a memorandum check which is written by the steward, and he pays for it afterwards as charged against him on his account, which is presented to him at the end of each month. No one but a member can pay for such liquors so ordered. A member can bring a friend to the club once or twice a year, but he can be served only while in the club house upon the order of a member, and the charges must be paid by the member. Except in this way, no one but a member can be admitted. This disposition of the liquor is not for the purpose of making a profit out of the member.

There are certain classes of crimes which do not depend upon the intention of the offender, and are not to be distinguished from simple torts, except by the fact that in the one instance an individual sues for damages resulting from the private tort, while in the other the state prosecutes for the penalty denounced for the public wrong. In these cases the offence consists in the act done, without regard to the intention with which it is committed. There is no difficulty in attributing to a corporation an offence of this character, since it may be committed by the company's agent or servant employed for that purpose.

" When an act in general terms is made indictable, a criminal intent need not be shown, unless, from the language or effects of the law, a purpose to require the existence of such intent can be discovered. The question appertains to the department of statutory construction, and to introduce into the act the requisite of a guilty mind, it must appear that such was the

intent of the lawmaker." *Halsted* v. *State*, 12 *Vroom* 552; *S. C.*, 10 *Id.* 402.

In my judgment, it is wholly immaterial and not a legitimate subject of inquiry, whether an intention to violate or evade the law was present or not. Intent constitutes no part of the offence; the simple question is presented, whether the act expressly inhibited has been done. If so, the presumption of wrongful intent is absolute and cannot be controverted.

Nor can the inquiry be instituted as to whether the defendant is capable of receiving a license to sell liquors. If the act concerning inns and taverns had been framed with a view to enable every person, natural or artificial, to obtain a license, if such privilege could be claimed as a right under the law, there might be some force in the suggestion, that the incapacity to receive a license would exonerate the seller from the penalty of selling without a license. The license laws indicate no such purpose; the license to sell is, in the contemplation of these enactments, to be extended to the few, in exclusion of the many. Stripped of every immaterial and irrelevant issue, the sole question in this case is, whether the disposition by the defendant of liquors in the manner hereinbefore stated was in contravention of the statute.

Was it a sale of the prohibited articles?

This question has been much discussed in the courts of other states. No attempt will be made to reconcile the cases; they are widely divergent. Reference will be made to such of them as will present the views which have been adopted on either side of the controversy.

*The Tennessee Club, of Memphis*, v. *Dwyer*, 11 *Lea* 452. This club was very like in organization and mode of procedure to that of the defendant here. The Tennessee court did not hold that the distribution of liquor by the club did not constitute a sale, but put their ruling upon the distinct ground that the club was not a retail dealer within the meaning of their statute.

So, the case of *State* v. *Smith*, 5 *Humph.* (*Tenn.*) 394, turned upon the question, whether the defendant was a retail mer-

chant within the contemplation of the statute under which suit was prosecuted.

In *Commonwealth* v. *Smith*, 102 *Mass.* 144, the court held that it was to be left to the jury to say whether the scheme was intended as an evasion of the law.

That position is clearly untenable in this state, where the statute expressly defines the offence without any reference to intent.

In the later case of *Commonwealth* v. *Pomphret*, 137 *Mass.* 564, the Massachusetts court said : "This case is not to be governed wholly by any general definition of the word 'sale' or 'selling.' The statute under which the complaint in this case is made was passed after the decision of *Commonwealth* v. *Smith*, 102 *Mass.* 144, and it must be presumed that the draftsman adopted the construction of the court in that case."

It may fairly be inferred from this expression that the previous decision was not entirely satisfactory to the judges who decided the later case.

*Seim* v. *State*, 55 *Md.* 566, is in point for the defendant. It takes the ground that the members of the club are joint owners of the liquor, and that the disposition of it was no sale thereof.

It should be observed that in the subsequent case, *Chesapeake Club* v. *State*, 63 *Md.* 446, the members of the Maryland Supreme Court were equally divided in opinion, and three of the judges distinguished the case of Seim *v.* State without expressing their concurrence in its views.

*Graff* v. *Evans*, 8 *Q. B. Div.* 373, is the leading authority relied upon in the cases which have been cited. That suit was against Graff, the manager of a social club, for selling liquor by retail. The court said, "that the question was, did Graff, the manager, who supplied the liquor to Foster, effect a 'sale by retail?' I think not. I think Foster was an owner of the property together with all the other members of the club. Any member was entitled to obtain the goods on payment of the price. A sale involves the elements of a bargain. There was no bargain here, nor any contract with Graff with respect

to the goods. Foster was acting upon his rights as a member of the club, and was entitled to be supplied at a certain price. I cannot conceive it possible that Graff could have sued him for the price as goods sold and delivered. There was no contract between the two persons, because Foster was vendor as well as buyer. Taking the transaction to be a purchase by Foster of all the other members' shares in the goods, Foster was as much a co-owner as the vendor. I think it was a transfer of a special property in the goods to Foster, which was not a sale within the meaning of the section."

I confess my inability to comprehend the force of this reasoning. The fact that Foster, in the language of the court, " was acting upon his rights as a member of the club, and was entitled to be supplied at a certain price," did not denude the transaction of a single element which inheres in a sale. The Inn and Tavern act establishes certain rates to be charged by an innkeeper, and he is obliged to furnish meat and drink to those who apply at the standard prices. Yet if a guest is served by the landlord with drink, it is none the less a sale because he is entitled to be supplied at a certain fixed price. The action was against Graff, and not against the club. The liquor was dispensed by Graff as the manager or steward of the club, and therefore the court was right in saying that Graff could not maintain an action against Foster for goods sold and delivered. But if Foster had subsequently refused to pay for the liquor, how can it be held that the club could not have maintained an action against him for goods sold and delivered? If a member of an incorporated company takes a portion of its goods under a promise to pay for them, and appropriates them to his individual use, could he successfully set up, in defence to a suit for the price, that as a member or stockholder he had an interest in the goods as a co-owner before he purchased them?

The court likens it to a purchase by a number of persons of a cask of wine to be divided between them in proportion to the sum paid by each, but it is manifestly not a parallel case. The club purchases the entire cask, and disposes of it in small

quantities from time to time to such members as may desire to be served with it. The corporation is a person, and it is the case of an individual owner of a cask of wine disposing of it to such individuals of a selected class as may desire to have it at a stipulated price. Every quality of a sale is present in such a transaction. The liquor is not the property of the member before it is separated from the common mass and delivered to him, under his promise to pay for it, but the property of the company. It is not the property of the member until after the delivery and appropriation of it by him to his own use. If he should clandestinely enter the club house at night and regale himself with the liquors of the club, it would prove a very shallow defence to an indictment for larceny if he set up that he was a co-owner of the property. As well might a bank cashier, who was likewise a shareholder in the bank, set up a like plea to a charge of embezzlement. Such specious defences have received no countenance except in prosecutions for the illegal sale of ardent spirits. For an unlawful taking of its stock of liquors, either by a member or a third person, the right of action would be in the club alone. The well reasoned cases sustain that view.

*State* v. *Mercer*, 32 *Iowa* 405. The social club in this case sold tickets to its members, which were exchanged for liquor drank in the club house. The Iowa court held that the selling of the ticket constituted a sale of liquor in violation of the statute prohibiting the keeping of liquor with intent to sell the same. The proof of the intent to sell rested upon the evidence that such sale was in fact made.

*State* v. *Lockyear*, 95 *N. C.* 633. The defendant was the steward of a social club duly incorporated. The members, but no other person, were permitted to purchase from the steward meals, cigars and liquors, for which the price was fixed by the officers at a sum sufficient to cover costs, but not for profit. The charge that furnishing liquors to members in that way constituted a sale was maintained, on the ground that all the elements of an executed contract were present. The defendant delivered it to the member at his call, and

received a fixed compensation for it. The property in the goods passed and vested in the purchaser, and the money paid became the property of the club.

Suppose that some one had forcibly taken it from the member after he had paid for it, in whom would the right of action for the tort have inhered ? Again, suppose that some one had taken from the steward the price he received for it, who could have maintained an action to recover it? These questions can obviously receive but one answer.

*Martin* v. *State*, 59 *Ala.* 34. The defendant was an employe of a duly incorporated social club. Only members or persons specially invited as their guests could enter. The club purchased spirituous liquors and sold only to members to be drank in the club room. The money paid for liquor was deposited in the common fund, and was spent only to replenish the stock of liquors for the use of the club. No non-member was permitted to buy or pay for liquor. The court held this to be a sale; that the ownership of the liquor was thereby changed, the title passing to the member who paid for it. In support of this view reference was made to *Benjamin on Sales*, § 1, where it is said that, " to constitute a valid sale, the following elements must concur—*first*, parties competent to contract; *second*, mutual assent; *third*, a thing the absolute or general property in which is passed to the buyer; *fourth*, a price paid or promise to pay." None of these essentials were absent.

In *Marmont* .v. *State*, 48 *Ind.* 21, it was admitted in the agreed statement of facts that there was no intention on the part of the defendant to violate the law. The question was, whether the transaction amounted to a sale. The court, in deciding the case, said : " To constitute a sale, there must be a passing of the right or title to property for money which the buyer pays or promises to pay to the seller for the thing bought or sold. When a firm purchases with partnership funds or upon credit a sack of coffee or a barrel of sugar, the coffee or sugar belongs to the firm ; but when a part of each is taken out and transferred to a member of the firm, either for

cash or upon credit, a valid transfer has been effected from the firm to the individual members. So, while the beer was in the keg, it was the common property of the society, but when a portion was withdrawn and delivered to a member of the society, upon credit or for cash, the portion so withdrawn ceased to belong to the society and became the separate property of the member receiving it, and the transaction invested him with the power to drink it himself, to give it away, to sell it or throw it away."

Thus the title passed to the buyer and the consideration to the seller, presenting every quality requisite to a complete bargain and sale. It is wholly immaterial whether the sale is made in open view to all who apply, or in the most secluded place, to which only the trusted few can gain admittance. The penalty of the statute is denounced against the sale without license, whether in public or private. The prohibited act is the sale without license, and, in my opinion, the admitted facts show that such sale was made by the defendant below in contravention of the law.

The judgment of the Essex Pleas should be reversed, and the judgment of the police justice affirmed, with costs.

The practice in these cases is stated by Mr. Justice Depue, in *Dale* v. *See,* 22 *Vroom* 381, to be as follows: "If the Common Pleas found the judge of the District Court erred in excluding the evidence offered, there should have been only a reversal of the judgment, remitting the record for a new trial. The final judgment given by the Pleas in favor of the defendants was erroneous. Whether this court, in reversing the judgment of the Pleas, shall remit the record to that court to the end that a proper judgment may be entered there, or shall reverse the judgment of the Pleas and affirm the judgment of the District Court, depends upon whether the ruling of the judge of the District Court, in excluding the evidence offered, was or was not erroneous."