THE STATE v. E. H. NEIS.

*Retailing—Sale— Co-operative Club.*

On indictment for retailing spirituous liquors without license, it appeared that defendant, as steward of a club, was given a jug of liquor by individual members thereof, who owned the liquor in common, and that he furnished to one of such members a drink from the jug, taking ten cents in exchange. The amount received was just about the value of the liquor furnished, and was used with other money so received from other joint owners of the liquor in replenishing the jug: *Held,* that there was a sale. Following *State* v. *Lockyear,* 95 N. C., 633.

INDICTMENT for retailing spirituous liquors without license, tried before *Moore, J.,* at January Term, 1891, of BUNCOMBE Criminal Court.

The jury returned a special verdict, the nineteenth paragraph of which is as follows:

" That on April 28th, 1890, the defendant, at the Club House of the Cosmopolitan Club in the city of Asheville, furnished and dealt out to the said W. E. Williamson a

small, quantity, to-wit, a drink, of spirituous liquor, so held by the defendant as aforesaid, the said drink being a quantity less than a quart, and being taken by said defendant from a demijohn in which some other members, as aforesaid, had an equal quantity of liquor with said Williamson, and at the same time and place received from said Williamson the sum of ten cents in the legal currency of the United States, which sum was about the value of the quantity of said spirituous liquor so furnished as aforesaid, and that said defendant thereupon handed the said sum of money to the said E. J. Holmes, who afterwards expended it for the purchase of other spirituous liquors for the said Williamson, and turned the same over to the custody of the defendant for the replenishment of the stock of liquor of said Williamson."

The other facts sufficiently appear in the opinion. Upon the special verdict the Court held that the defendant was not guilty, and ordered his discharge. Appeal by the State.

*Messrs. J. B. Batchelor* and *John Devereux, Jr.,* for the State.*
*Mr. F. H. Busbee,* for the defendant.

CLARK, J.: The transaction presented by the special verdict, stripped of surplusage, is this: The defendant was steward of the Cosmopolitan Club of Asheville, and was indicted for selling spirituous liquor to its members. In consequence of the decision in the analagous case of *State* v. *Lockyear,* 95 N. C. 633 (the state of facts being the same), he pleaded guilty. The club thereupon distributed a part of the liquors on hand to certain of its members, who placed them in the hands of the defendant to be held by him, not for the club, as a club, but for those individual members of the club as tenants in common, the share of each not being

*The Attorney General, being interested in the case, did not appear in it.

kept separate, but mingled in the same casks, jars and demi-johns. From time to time, as each of those members wished, he obtained drinks from the defendant for himself and friends, paying therefor in money (or giving tickets afterwards redeemed in money) as near as may be the cost price of the drinks so furnished, and with the money the defendant from time to time replenished the stock of liquors.

We can see in this transaction no substantial distinction from the facts of Lockyear's case. There, the steward of the club, as a club, received the money for drinks furnished at cost, and with the money replenished the stock of liquors. Here, the individuals of the club, treating themselves as unorganized, furnished through defendant to themselves from a common stock the drinks at cost, and with the money received therefor replenished the common stock.

When, in the present case, an individual received drinks for himself and friends, he clearly did not receive the identical liquor which belonged to himself, but he received liquor which belonged mostly to others, and in which he had a minute undivided interest. For his money he received in exchange liquor which belonged to several others as well as to himself, and converted it to his sole and separate use. Before the transaction, the money was solely his and the liquor belonged to several. By virtue of the transaction, and in exchange for the money, the liquor became his sole and separate property. This is surely a sale. It has every element of a sale. It cannot affect the transaction that subsequently the defendant would purchase the same amount of liquor in value for the party paying the money and mingle it in the common stock. This last act is that of a member of an association keeping up his quota of contribution to the common stock; the other is the purchase by a member of an association from its common agent, and the character and purport of the act are not changed by the subsequent contribution.

It could make no difference that, here, the defendant was the agent of the individual members of the club acting as an unorganized body, and that in Lockyear's case the salesman was agent of individuals acting as an organized club.

If an agent is appointed by several tenants in common to dispose of real or personal property, and he does dispose of any part thereof, in exchange for money, it is none the less a sale because the party paying the money and receiving such part to his own use happens to be one of the tenants in common.

And it would still be a sale although afterwards the money so received should be invested in the purchase of similar property held by the same tenancy in common.

The healing here is simply what is known as "co-operation," which is an arrangement by which a member of an association procures supplies from the association at cost. The object and the effect of co-operation are not to abolish purchases, for the member still buys from the association, but to procure supplies at cost. This transaction is necessarily either a partition in severalty to the tenant in common, or a purchase. It is clearly not a partition to each tenant in common in severalty of his undivided portion in the common stock, and it is plain that such is not the purpose and intent of the parties, for money is received in exchange, and it is to be used to obtain more liquor. Besides, the person obtaining the liquor not only does not obtain the identical liquor belonging to him, but he could very rarely, if ever, obtain his exact allequot part unless the stock became very low.

In an almost exactly similar state of facts in *State* v. *Essex Club*, 20 Atl. Rep. (N. J.), 769, VAN SYCKEL, J., says: " The liquor is not the property of the member before it is separated from the common mass and delivered to him under his promise to pay for it, but the property of the company. It is not the property of the member until after the

delivery and appropriation of it by him to his own use. If he should clandestinely enter the club-house at night and regale himself with the liquors of the club, it would prove a very shallow defence to an indictment for larceny if he set up that he was a co-owner of the property. As well might a bank cashier, who was likewise a shareholder in the bank, set up a like plea to a charge of embezzlement. Such specious defences have received no countenance except in prosecutions for the illegal sale of ardent spirits."

The fact specially found that the membership of the club is "composed of gentlemen of the highest social standing," does not throw any light upon the transaction, except that it may be reasonably supposed that they have no desire to evade the law, and by this proceeding wish merely to procure a construction as to the legal nature of this transaction. No set of men have any special privileges under our Constitution, and the parties interested must pay a license tax, if other citizens pay it, and be prohibited altogether when others are prohibited.

Nor can it make any difference that no profit was intended to be realized, but that as near as possible the drinks are to be furnished at cost. Profit is not a necessary ingredient of a sale. Indeed, many sales are made at a loss. Besides, if the defendant's contention was sound, " co-operative barrooms" would spring up on all sides, and the revenue act, as to the sale of liquor, or the prohibition laws where they prevail, would be a nullity. If the gentlemen composing the Cosmopolitan Club of Asheville can be exempted from the license tax by the simple device of treating themselves as unorganized tenants in common of a stock of spirituous liquors, and employing an agent to furnish drinks to any of their club and their friends by selling at cost, the same can be done by any five hundred or five thousand patrons of a bar-room. The " dealer" would simply become an " agent," and in lieu of profits would receive as compensation for his

services a commission on purchases, or some amount out of receipts, and the money received for drinks would be invested as usual, and, as in the present case, to buy more liquor for the customer and his friends. Such an arrangement may be ingenious, but none the less a license tax is requisite to make it legal to furnish drinks in that mode.

The case of *State* v. *Lockyear, supra,* has often been cited with approval in the Courts of other States. *State* v. *Essex Club* (N. J.), 20 Atl. Rep., 769; *State* v. *Easton Social Club* (Md.), 20 Atl. Rep., 783 (Nov., 1890); *People* v. *Soule,* 74 Mich, 250, and other cases.

These authorities, together with those cited in Lockyear's case itself, render further citations unnecessary.

Upon the facts found in the special verdict the defendant should be adjudged guilty. The case must be remanded, with directions that the judgment be so entered and that sentence be imposed in conformity with law.

Error.