MOHRMAN *v.* THE STATE.

1. The mere fact that the selling and drinking of intoxicating liquors was "only an incident and not the main object" of the incorporation of a social club, will make the place where such liquors are dispensed and drunk none the less a tippling-house within the meaning of the statute making penal the keeping open of such houses on the Sabbath day.
2. A person who is the manager, and also a member and officer of such a social club, and who exercises a general superintendence over the affairs of the club, including the bar from which intoxicating drinks are furnished, is amenable to the statute above referred to.
3. That "only members" are permitted in the rooms of a social club will not take such an organization out of the statute prohibiting the keeping open of tippling-houses on the Sabbath day.

Submitted November 8, — Decided November 16, 1898.

Indictment for keeping open a tippling-house on the Sabbath day. Before Judge Eve. City court of Richmond county. September term, 1898.

*E. B. Baxter*, for plaintiff in error.
*C. Henry Cohen, solicitor,* contra.

COBB, J. Mohrman was arraigned in the city court of Richmond county, charged with the offense of keeping open a tippling-house on the Sabbath day. At the trial the following facts were agreed to: "(1) The rooms for keeping open which the defendant was indicted were kept open on the day named in the indictment. (2) Said rooms were used as a rendezvous where the 'Grabemax Social Club' did gather on the Sabbath day named in the indictment, and other days, and drink, from a bar kept in the said rooms, intoxicating liquors. (3) They were kept open with the defendant's knowledge, on the Sabbath day as alleged. (4) Said rooms were rented by 'The Grabemax

Social Club,' which is incorporated, and which is an organization composed of some one hundred citizens of Augusta. All that is in them belongs to said corporation, which pays taxes thereon. The stock of liquors therein is the property of said club, and drinks therefrom were sold to members of said club on the days mentioned in the indictment. The selling of liquor on Sunday [was] only an incident and not the main object of the organization. (5) Defendant is manager of the said club, and receives a salary for his services. He was an employee and officer of the said club, with designated duties, one of which was to see that the bar in the club was properly conducted, and kept open for the use of the members, from which drinks were sold. It was his business to look after the general conduct and running of the club, but he was in no sense, other than the above, the proprietor or owner of said rooms; nor had he any authority or control over them. He acted under orders, and was strictly amenable to the governing board of the said club. His authority to do all that he did do flowed wholly from his employment, and only members are permitted in the said club rooms on Sunday or any other day." On the above facts the presiding judge, sitting without a jury, found the accused guilty. His motion for a new trial on the general grounds was overruled, and he excepted.

An examination of the statement of facts above quoted will show that the "Grabemax Social Club" was distinguished from an ordinary tippling-house in three particulars: (1) The selling of liquor on Sunday was incidental to, and not the main object of, the organization. (2) The accused was an employee and officer of the club, and not the owner thereof. It was his duty, acting under orders of the governing board of the club, to see that the bar was properly conducted and kept open for the use of the members, and to exercise a general superintendence over the club. (3) "Only members are permitted in the said club rooms on Sunday or any other day." We are called upon to decide whether these three distinguishing characteristics of this social organization take it out of that class of liquor-selling establishments commonly denominated "tippling-houses."

1. We are of opinion that the incidental selling of liquors will make a place none the less a tippling-house than if that was the

main object of its establishment. The evil intended to be corrected by the statute is the keeping open on the Sabbath day of houses where liquor is furnished and drunk; and it makes no difference, we think, for what purpose the house is being operated, if the fact remains that intoxicating liquors are furnished on the Sabbath day, to be drunk on the premises where they are supplied. It certainly can be no reply to the statute that the persons guilty of keeping open a house where liquors are sold and drunk had some other business in view as the primary object of its operation, and that the selling of such liquors is merely an incident to this object. A person keeping a grocery-store, but who kept, as incidental to his grocery business, a bar in one corner of the store, at which his friends were accustomed to gather on the Sabbath day and partake with him of intoxicating drinks, might as well make this plea as the plaintiff in error. The fact that the main purpose of the one was social pleasure, and of the other the realization of profit from his grocery business, can make no difference. In both the selling was merely incidental to, and not the main object of, the business. In the case of Harris v. People, 1 Colo. 289, the accused was convicted of "keeping open a tippling-house on the Sabbath." It appeared from the evidence that he was a grocer, and kept the usual stock of goods in that line of business, and in addition kept on hand intoxicating liquors. Reed, J., in the opinion, uses this language: "The object of the statute, evidently, was to prevent places where intoxicating liquors were sold from keeping open and pursuing their traffic upon the Sabbath. It requires such places to be closed, and parties can not evade the law by carrying on two kinds of business in the same room, and claiming that the sale of groceries was the principal, and the sale of liquors only an incident." In Williams v. State, 100 Ga. 511, it was held that where a person "in her dwelling-house, sold whisky by retail to different persons, and on each occasion permitted the same, or a portion thereof, to be drunk on the premises," she was guilty of keeping open a tippling-house. The selling of whisky was only incidental to the purpose for which she occupied the house. And yet the fact that it was her dwelling did not shield her. See also Harvey v. State, 65 Ga. 568.

While furnishing intoxicating drinks might have been a mere incident to the purposes for which the Grabemax Social Club was established, it does not appear but that its members, or some of them, went to the rooms of the club for the sole purpose of procuring and drinking intoxicants.   A person who carries on in connection with some other employment a business which is a violation of the law is just as guilty as he who carries on such business alone.

2. The second point is controlled by the principle announced in the case of *Cochran* v. *State*, 102 *Ga.* 631.   It was there held that "Evidence showing that the accused was an officer of a social club, that gaming with cards for money was carried on in a room thereof, that portions of the losses in the games played were appropriated to the use of the club, and that the accused, knowing these facts, collected and received the same for its benefit, was sufficient to warrant a verdict finding him guilty of keeping a gaming-house."   See also State *v.* Mercer, 32 Iowa, 405.

3. Is a social club which furnishes intoxicating liquors to its members only, to be drunk by them on the premises where sold, a tippling-house within the meaning of section 390 of the Penal Code, which provides that "any person who shall be guilty of open lewdness, or any notorious acts of public indecency, tending to debauch the morals, or of keeping open tippling-houses on the Sabbath day, or Sabbath night, shall be guilty of a misdemeanor"?   Keepers of tippling-houses have sought in various ways to evade the effect of this statute, and escape the punishment which it prescribes.   Some of the methods resorted to are strikingly unique; and this court has not looked with favor upon violators of this law, and has, in every instance where it could possibly do so, upheld convictions thereunder.   It has been held that "it makes no difference as to whether any liquors be sold or not; the offense consists in its being open, not in selling, or offering to sell, or giving it away." *Harvey* v. *State*, 65 *Ga.* 568.   See also *Klug* v. *State*, 77 *Ga.* 734; *Monses* v. *State*, 78 *Ga.* 110; *Seyden* v. *State*, 78 *Ga.* 105.   In the case of *Hussey* v. *State*, 69 *Ga.* 54, no authoritative ruling was made on the question as to whether a club which

furnished liquors to its members only was a tippling-house, within the meaning of the statute. True the court uses this language: "It makes no difference in law whether the place be called a barroom, or a glee-club resort, or a parlor, or a restaurant; if it be a place where liquor is retailed and tippled on the Sabbath day, with a door to get into it, so kept that anybody can push it open and go in and drink, the proprietor of it is guilty of keeping open a tippling-house on Sunday. It makes no difference if the drinking be done standing or sitting—at a bar or around a table—it is tippling, and the place where it is done is a tippling-house; and if anybody wishing to drink can have access thereto—if ingress and egress be free to all comers— it is a tippling-house kept open on Sunday." The court was in that case dealing with a public resort, and in so far as any language in the headnotes or the opinion indicates that any other character of resort would not be a tippling-house, it is of course merely obiter. We think, however, that the first part of the language quoted will show that in the opinion of the court a house of the character now under consideration would be a tippling-house. In the case of *Minor* v. *State*, 63 *Ga.* 318, an organization known as the "Albany Glee Club" was under investigation. Resolutions and by-laws for the government of the club were in evidence. From these it appeared that the main and controlling purpose of the organization was to engage in selling and drinking liquors on the Sabbath day. It was not in a strict sense a public resort, for it was provided that, "no member shall invite an outsider that has not paid his quota to the benefit of the club, without the consent of two thirds of the members present." This club was held to be a tippling-house. We can see, however, some difference between the Albany club and the club under consideration in the present case, for the latter club, according to the evidence, was thoroughly exclusive, and under no circumstances could persons other than those enjoying membership therein partake of its benefits. It does not appear, however, from the evidence, that any limitation was put upon its membership.

The object of the General Assembly in passing this statute, as was said by Warner, J., in *Hall* v. *State*, 3 *Ga.* 18, "was to re-

move all temptation to idle and dissolute persons who might be disposed to congregate at such places, and violate the Sabbath by any improper condúct." It was said in *Sanders* v. *State,* 74 *Ga.* 82, that "the purpose of the act was not only to close up such establishments on Sunday, in deference to the finer and better feelings of orderly and well-disposed people, but to remove this incitement to graver and more dangerous violations of the law."

It is rather difficult to embrace within one comprehensive definition every class of resort which could properly be called a tippling-house. Judge Bleckley, in *Minor* v. *State,* supra, says that "it is something easier for an offender to baffle the dictionary than the Penal Code, for the former is perplexed with verbal niceties and shades of meaning, while the latter grasps in a broad, practical way at the substantial transactions of men. The code offers no definition of a tippling-house. It deals with them as establishments too well known to need description, and simply prescribes a penalty for keeping them open on the Sabbath day or Sabbath night." According to Black's Law Dictionary, a tippling-house is "a place where intoxicating drinks are sold in drams of small quantities to be drunk on the premises." Anderson says it is "a place of public resort where spirituous, fermented, or other intoxicating liquors are sold or drunk in small quantities without a license therefor." Also, "a public drinking-house—where intoxicating liquor is either sold by drams to the public, or else given away and imbibed." (Anderson's Law D., "tippling-house".) The house under consideration in the present case comes within the letter of the definition first quoted, and within the spirit, at least, of the last. See also Black, Intox. Liquors, §20. But, as Judge Warner, quoting from Chief Justice Marshall, says in *Hall* v. *State,* supra, "although penal laws are to be construed strictly, they are not to be construed *so strictly* as to defeat the obvious intention of the legislature." And in *Sanders* v. *State,* supra, we find the following: "Courts are not very astute in shielding violators of this provision from punishment by resorting to niceties of verbal criticism such as would be intelligible only to grammarians and fastidious scholars, but would utterly fail to impress less

cultivated minds and tastes, in order to provide for them a way to escape."

Even if a sale is necessary before a place where liquors are furnished can be characterized as a tippling-house, the weight of modern authority seems to be, that such a furnishing as the evidence in the present case discloses is a sale. In the case of State v. Lockyear, 95 N. C. 633, a number of persons organized a club for social and literary purposes, and became duly incorporated. Incidental to the main purpose of the organization, the members, but no other persons, were permitted to purchase from the defendant, its steward, liquors and other articles, which were furnished by the club at a price fixed by its officers, sufficient to cover the cost, but not for the purpose of profit. It was there held that the furnishing of liquors to the members of the club, under these circumstances, was a sale, in violation of the local option act. In the opinion Chief Justice· Smith uses this language: "There can be no question that in a strict legal sense the transaction described in the verdict is a sale of spirituous liquors. All the elements of an executed contract are present. The corporate body, a legal entity, and the owner of the liquor, through its servant, the defendant, delivers it to the purchaser at his call, and receives a fixed compensation in money therefor. The property in the goods passes and vests in the purchaser, and the money paid is received for and becomes the property of the club. Can there be any doubt that a corporation may make contracts and deal with a corporator, precisely as with a stranger, and valid obligations, capable of enforcement, be thus formed between the parties? And is 'not this dealing with the prohibited subject directly within the terms of the statute, and does it not open the door to the mischiefs intended to be suppressed? It is not necessary that the vendor should be authorized to sell to any applicant, as an ordinary retailer. He is not allowed to sell to any one, and the fact that customers must be members of the association does not relieve him from criminal responsibility under the mandatory statute." In the opinion will be found several citations of authority supporting the ruling there made. See also State v. Neis, 108 N. C. 787, 13 S. E. Rep. 225, and authorities cited in note in

Southeastern Reporter. Substantially the same ruling has been made in New York. People v. Sinell, 12 N. Y. Supp. 40; People v. Bradley, 11 Ibid. 594. At the conclusion of his opinion in State v. Essex Club, 20 Atl. Rep. (N. J.) 769, Van Syckel, J., says that "It is wholly immaterial whether the sale is made in open view to all who apply, or in the most secluded place, to which only the trusted few can gain admittance. The penalty of the statute is denounced against the sale without license, whether in public or private. The prohibited act is the sale without license, and in my opinion the admitted facts show that such sale was made by the defendant below in contravention of the law." See also Martin v. State, 59 Ala. 34; People v. Soule, 41 N. W. (Mich.) 908; Kentucky Club v. City of Louisville, 17 S. W. (Ky.) 743; State v. Horacek, 21 Pac. (Kan.) 204. There are cases which hold that the furnishing of liquors under circumstances similar to those in the present case is not a sale, and we do not attempt to reconcile them. We think, however, that the better view is the one supported by the authorities above cited, the reasoning of which seems to be conclusive.

In this State a sale is not necessary, as has been shown, to make out the offense of keeping open a tippling-house on the Sabbath. Does the statute, fairly construed, embrace within its terms a house of the character described in the present case? We think so. The statute intended that all places where persons are accustomed to congregate and drink intoxicating liquors should be closed on the Sabbath day. The fact that liquors are furnished to a hundred designated persons, and no others, makes the place where such liquors are supplied none the less a tippling-house. It is still a place where men congregate for the purpose of drinking intoxicants. There is no limitation placed upon the membership of the club over which the plaintiff in error exercised a general superintendence; it is one hundred now, and next year may be five hundred. It is not unfair to assume that some, at least, of its membership are accustomed to congregate at the club rooms on the Sabbath day for the sole purpose of procuring intoxicating drinks. To hold that such a place was not a tippling-house would be doing violence to the

statute, and would defeat, in a large measure, the very object
for which it was enacted; that is, to prevent persons congre-
gating and imbibing intoxicants on the Sabbath day.   It was
claimed by counsel for plaintiff in error, in his brief, that the
Grabemax Social Club of Augusta was "a respectable place to
which the public has not access, in which members of a club
owning the resort meet for social ends, and merely drink as an
incident of being there."   This may be true, but it is neverthe-
less a tippling-house within the meaning of the statute, and
must be closed on the Sabbath day.

   *Judgment affirmed.   All the Justices concurring, except
Simmons, C. J., and Lumpkin, P. J., absent.*