STATE OF MINNESOTA *vs.* JOHN ORTH.

January 30, 1888.

**Sale of Intoxicating Liquors — Licenses — Wholesale Dealers. —** The laws of this state regulating the sale of intoxicating liquors (Gen. St. 1878, c. 16; Laws 1887, cc. 5, 6, 7, 8, 81) do not apply to exclusively wholesale dealers, who sell to other dealers, so as to make it necessary for them to take out licenses.

The defendant was indicted in the district court for Hennepin county for the crime of selling liquor without first obtaining a license therefor.  A demurrer to the indictment was overruled by *Young* and *Lochren,* JJ., and, upon the defendant's request, the case was certified to this court.

*Moses E. Clapp,* Attorney General, and *Frank F. Davis,* for the State.

*Thomas Canty* and *Benton, Plumley & Healy,* for the defendant.

GILFILLAN, C. J.   Defendant was indicted by the grand jury of Hennepin county for selling at wholesale, he being a wholesale liquor merchant, to a retail liquor merchant in the city of Minneapolis, one keg of beer, containing eight gallons, without a license.   The defendant demurred to the indictment on the ground that it does not state facts constituting a public offence.   The court below overruled the demurrer, but, because the question raised is important and doubtful, certified the case to this court for its opinion thereon.

The laws regulating the sale of intoxicating liquors are in a somewhat singular condition.   Prior to 1887 they were contained in Gen. St. 1878, *c.* 16, with such modifications of its provisions as to particular localities as were to be found in city and village charters.   In 1887 the legislature, without expressly repealing any part of chapter 16, passed five acts (chapters 5, 6, 7, 8, and 81, Laws 1887) on the subject, chapter 81 amending, in terms, Gen. St. 1878, *c.* 16.   So that, instead of having one chapter containing the whole law on the subject, in which some degree of consistency might be expected, we have six; some, at least, apparently passed without having in mind the provisions of the others.

The question in this case arises on Laws 1887, *c.* 6, § 4, which reads: "Whoever sells, barters, gives away, or otherwise disposes of any spirituous, vinous, fermented, or malt liquors, without first having obtained license therefor agreeably to the laws of this state, shall be deemed guilty of a misdemeanor.   *   *   *"   This section does not prescribe what the license shall be, how it shall be obtained, nor who must have one to justify his selling, (except in the case of druggists.)   "Agreeably to the laws of this state" refers us to other parts of the laws for these purposes.   This is the section which prescribes the penalty for selling without license.   The section in chapter 16, Gen. St., which prescribed the penalty was section 4, which read: "Whoever sells or barters any spirituous, vinous, fermented, or malt liquors *in a less quantity than five gallons,* without first having obtained license therefor, *   *   * shall be deemed guilty of a misdemeanor."   The substantial difference in these two provisions is in the omission from the act of 1887 of the words "in a less quantity than five gallons." Gen. St. 1878, *c.* 16, § 4, indicated who must obtain license, to wit,

any one who sells in a less quantity than five gallons. Laws 1887, c. 6, § 4, does not contain any such indication, unless it is to be taken as applying to all sales, without regard to the character of the sale or the quantity sold. If it were to be construed literally, or apart from the other provisions of the laws, there could be little doubt of its so applying. Leaving out the words "in a less quantity than five gallons" from this section, which is in some respects the equivalent of section 4, chapter 16, Gen. St. 1878, is suggestive. That, however, is not the only difference in the two sections. The section in the act of 1887 increases the penalty, and also excepts from its operation prescriptions filled by regularly licensed druggists when made by duly licensed practising physicians, which section 4, chapter 16, did not. It is not necessary, therefore, to conclude that the intention in passing section 4 of chapter 6 was to do away with the difference between sales at wholesale and those in quantities less than five gallons.

Prior to 1887, the policy of the state has always been, as we believe it has been in most of the states, to require licenses only for sales in small quantities, usually for consumption by the purchaser at the place where sold, to control and regulate drinking and drinking places. Nearly all the provisions of the present laws (other than the section now before us) for licensing and regulating the business of selling intoxicating liquors indicate the same purpose, and are inapplicable to the business of selling at wholesale. By section 29, added to chapter 16, Gen. St. 1878, by chapter 81, Laws 1887, the application for license must designate the *place* where the business is to be carried on, and a notice of the application must be published, containing the name of the applicant, or description of the *premises*, as stated in the application. By section 26, all licenses must contain a description of the *premises* and *room* where the liquors are licensed to be sold; and it is made a misdemeanor to sell, barter, or give away any intoxicating liquors outside of, or in any *other place* than, the *room* so designated. By section 28, the license may be revoked for violation of the laws regulating sales, and, if the licensee be the owner of the premises described in or covered by the license, no license shall be issued to be exercised on said *premises* for the residue of the term thereof. By section 1, chapter 6, Laws 1887, the bond required of

the applicant for a license must contain a condition that he will not sell at any place other than the *room* named in the license. These provisions clearly do not contemplate, and cannot apply to, the wholesale business, which is usually managed at a general office, and in which the stock is not kept in the same room as the office, but in a warehouse, perhaps in another building; in which deliveries are not made at the office, but at the warehouse. or to a carrier, or at the place of residence of the buyer; and in which many, if not most, of the sales are made through agents who solicit and receive orders, and agree on sales, at any place where they may find persons willing to buy.

The regulations for the business to be licensed are equally indicative of sales at retail, and at some designated place or room, where the liquor is usually consumed in the room where sold. The bond must have a condition that the licensee will not sell on any general or special election day, (section 1, chapter 6;) and it is made a misdemeanor to make a sale on such a day, or to fail to keep the place where the sale is licensed, closed during all hours of such a day. Section 1, chapter 81. That drinking intoxicating liquors tends to inflame to riot and acts of violence men who are congregated under the excitement of an election is an obvious reason for endeavoring to suppress drinking, and for prohibiting sales for immediate consumption, and for closing places of sale for immediate consumption, on an election day. But the sale on such a day of a barrel of liquors to be sent away from the place of sale, perhaps to Dakota or Montana, before consumption, could be no more productive of danger to the public peace than on any other day; and there is no reason apparent why such sales should be permitted on other days, but prohibited on election days. All licenses must be posted up in the room where the business is done. Section 4, subsection 25, chapter 81. Subsection 24 makes it unlawful to keep any bagatelle, card, or any other kind of table, except billiard and pool tables, or to allow the same to be kept, in any room where liquors are licensed to be sold or kept for sale, or to allow games at cards, throwing dice, or any other kind of. game to be played in such room. The bond must contain a condition that the licensee will keep a quiet and orderly house, and not

permit gaming in his house or place of business. All the provisions of the laws in regard to procuring the license, the contents of the license, and the regulating the business, point unequivocally to the retail trade, making sales in small quantities to consumers, as the business for which a license is required; and, taking the laws as a whole, we conclude the legislature did not intend to depart from the former policy of the state, and require licenses for any but the retail trade.

A somewhat analogous question was presented in *City of St. Paul v. Troyer*, 3 Minn. 200, (291,) which was upon a city ordinance providing: "No person shall vend, dispose of, traffic, or deal in, or give away spirituous, vinous, fermented, or intoxicating liquors in or at any place or house within the city of St. Paul, without having first obtained a license." The court held that, as it contemplated a selling at a particular place, it did not apply to a manufacturer selling at first hand in large quantities to small dealers, and delivering to them at their places of business.

Order reversed.