STATE ex rel. LOUIS PATTERSON v. WILLIAM J. BATES.[1]

October 27, 1905.

Nos. 14,560—(175).

**Construction of Statute.**

Where the first section of a statute conforms to the obvious policy and intent of the legislature, it is not rendered inoperative by inconsistent provisions in a later section which do not conform to this policy and intent. In such case the later provision is nugatory and will be disregarded.

**Delegation of Powers.**

The fact that a statute confers powers or imposes duties upon a judicial or executive officer which are not strictly judicial or executive, or which are of an ambiguous or mixed character, does not render the statute void, as within the inhibition of article 3, § 1, of the state constitution.

**Sale of Intoxicating Liquor.**

Chapter 346, p. 626, Laws 1905, when properly construed, is consistent in all its parts, does not violate article 3, § 1, of the constitution of the state, and is constitutional and effective.

Appeal by relator from an order of the district court for St. Louis County, Cant and Dibell, JJ., discharging a writ of habeas corpus and remanding relator to the custody of respondent as sheriff of that county. Affirmed.

*Baldwin, Baldwin & Dancer,* for appellant.

*Edward T. Young,* Attorney General, *George T. Simpson,* Assistant Attorney General, and *John M. McClintock,* County Attorney, for respondent.

ELLIOTT, J.

The relator was charged with soliciting parties to purchase intoxicating liquors in quantities of less than five gallons in violation of the provisions of chapter 346, p. 626, Laws 1905. He was arrested and brought before the municipal court of the city of Duluth, and after hearing was held to await the action of the grand jury, and in default of bail was committed to the custody of the sheriff. Thereafter he caused

[1] Reported in 104 N. W. 709.

a writ of habeas corpus to issue out of the district court, and after a. hearing thereon an order was entered refusing to release the petitioner and remanding him to the custody of the sheriff. From this order an appeal was taken to this court under the provisions of chapter 327, p. 734, Laws 1895.

We are not embarrassed by any controversy about the facts. It is admitted that the relator was legally convicted in the municipal court, and the writ of habeas corpus properly discharged, if chapter 346, p. 626, Laws 1905, is constitutional and effective. This is the only question presented by the record. It is contended by the appellant that the statute is invalid, for the reason (1) that its several parts are so inconsistent and contradictory that the legislative intention cannot be ascertained, and (2) that it violates section 1, article 3, of the constitution of the state. The statute is entitled

> An act prohibiting the sale of intoxicating liquors, and for the granting of license for the sale of spirituous and vinous liquors, and providing for a penalty for the violation thereof.

Section 1 provides

> That whoever on his own behalf or as an agent for others, without having a license so to do as provided for in this act, shall solicit any person or persons, firm or corporation or association not having a license to keep a dram shop or saloon under the laws of this state or to a licensed physician or druggist to buy or contract for the future delivery or to make order for any spirituous or vinous liquors in any less quantity than five gallons or either on his own behalf or as said agent or as an agent for the purchaser make an order contracting for the future delivery of any such liquors to any said person, persons, firm, corporation or association shall be subject to a fine, etc.

Section 2 provides that

> The board of county commissioners may grant license to persons to act on their own behalf or as agents for others in the sale of spirituous or vinous liquors for future delivery in quantities not

less than five gallons to others than those duly licensed to keep a dram shop or saloon under the laws of the state in their respective counties as they think for the public good requires.

To say that the act is drawn with reasonable skill and accuracy would be to use the language of flattery. It is crude in construction and awkward in phraseology, and it is doubtful whether so brief a legislative enactment ever contained more bad grammar or a greater number of verbal inaccuracies. But such defects are not necessarily fatal to the statute, so long as the court, according to well-known rules of construction, is able to discover the intention of the legislature. "Neither bad grammar nor bad English will vitiate a statute, if the meaning of the legislature can be clearly discovered. Awkward, slovenly, or ungrammatical phrases and sentences may yet convey a definite meaning, and, if they do, the courts must accept it as the meaning of the lawmakers." Black, Int. Law, § 34; Kelly's Heirs v. McGuire, 15 Ark. 555; Murray v. State, 21 Tex. App. 620, 2 S. W. 757; Lane v. Schomp, 20 N. J. Eq. 82. The statute must be given the benefit of every reasonable inference. An interpretation which renders a statute null and ineffective cannot be admitted. It is an absurdity to suppose that after it is reduced to terms it means nothing. It ought to be interpreted in such a manner as that it may have effect, and not be found vain and nugatory. Vattel (Law of Nations, 253); State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 293, 37 N. W. 782; State v. Board of County Commrs. of Polk County, 87 Minn. 325, 334, 92 N. W. 216.

In order to render this statute consistent and intelligible, it is only necessary to omit the word "not" from the clause "quantities not less than five gallons" in the second section. There is no doubt of the power and right of courts to thus omit a word, when necessary to render a statute intelligible which as it stands is devoid of sensible meaning. The books are full of cases in which words have been omitted, supplied, or transposed. Moody v. Stephenson, 1 Minn. 289 (401); Woodruff v. Town of Glendale, 26 Minn. 78, 1 N. W. 581; Donohue v. Ladd, 31 Minn. 244, 17 N. W. 381; McGee v. Board of Co. Commrs. of Hennepin County, 84 Minn. 481, 88 N. W. 6; Chapman v. State, 16 Tex. App. 76; Hutchings v. Commercial, 91 Va. 68, 20 S. E. 950; Bird v. Board, 95 Ky. 195, 24 S. W. 118; Paxton v. Farmers, 45 Neb. 884, 64 N. W.

343; County v. Frey, 128 Pa. St. 593, 18 Atl. 478; Lancaster v. Lancaster, 160 Pa. St. 411, 28 Atl. 854; Black, Int. Law, § 37.

But it is contended by counsel that there is no more reason why the court should by construction omit the word "not" from the clause in the second section than supply it in the first section, which would make the section consistent and the statute valid, but render it entirely inapplicable as far as the defendant in this case is concerned. The rule that the part of the act which is later in position in the statute is to be deemed a later expression of the legislative will, and thus repeal a contradictory earlier provision, is usually, although not universally, accepted, but does not rest upon a very satisfactory foundation. It has been criticised by Bishop upon the very substantial ground that, as all the provisions of an act are adopted at the same time, there can be no priority in point of time on account of their relative position. Bishop, Written Law, §§ 62–65. If any inference is to be drawn from mere position, it would seem but reasonable to give the preference to what appears first in order. The draftsman would ordinarily express the dominant idea in his mind in the opening paragraph or section, and what follows would naturally and logically agree with what precedes. "For it is to be presumed," says Vattel, "that the authors of a deed had a uniform and steady train of thinking." But it is not necessary to invoke such a presumption in the present instance, as the rule of construction which presumes that what appears last in the act is the latest expression of the legislative will should not be applied where the provision standing first in the act is more in harmony with the other statutes in pari materia.

This exception to the rule was applied by this court in McCormick v. Village of West Duluth, 47 Minn. 272, 276, 50 N. W. 128. The statute there under consideration contained independent provisions in respect to the character of certain improvement bonds which were authorized by the act. By the first clause the bonds were to be made payable in five annual instalments, the first maturing one year from date, while the second clause provided that the bonds should be made payable at the option of the village after five years, and absolutely at the expiration of seven years, from their date. It was claimed that either the word "shall" appearing in each clause should be read "may," which would harmonize the two clauses and permit the municipal authorities

96 M.—8

to exercise discretion, or the clause last in order should be upheld as the later expression of the legislative will. The court said: "The rules of construction invoked by defendants' counsel in support of their demurrer are well recognized, but the true rule to be applied here is that, where the first clause of a section conforms to the obvious policy and intent of the legislature, it is not rendered inoperative by a later inconsistent clause which does not conform to this policy and intent. In such cases the later clause is nugatory and must be disregarded." This principle was recognized and applied in Dickerson v. Nelson, 4 Ind. 280, State v. Williams, 8 Ind. 191, and Sams v. King, 18 Fla. 557. In Kansas v. Commissioners, 16 Kan. 587, Justice Brewer said that where there is no way of reconciling conflicting clauses, and nothing to indicate which the legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with the other legislation on the same subject.

The omission of the word "not" in the second section renders the statute consistent and intelligible, and in harmony with the general policy of the state as expressed in judicial decisions and general legislation upon the subject-matter of intoxicating liquors.

No attempt has heretofore been made in this state to license and control the wholesale liquor trade. Prior to 1887, said Chief Justice Gilfillan, in State v. Orth, 38 Minn. 150, 36 N. W. 103, "the policy of the state has always been, as we believe it has been in most of the states, to require licenses only for the sale in small quantities, usually for consumption by the purchaser at the place where sold, to control and regulate drinking and drinking places. Nearly all the provisions of the present law (other than the section now before us) for licensing and regulating the business of selling intoxicating liquors indicate the same purpose and are inapplicable to the business of selling at wholesale." After noting the detailed provisions of the various sections and their apparent inapplicability to the sale of liquors at wholesale, the Chief Justice continues: "All the provisions of the law in regard to procuring the license, the contents of the license, and the regulating the business point unequivocally to the retail trade, making sales in small quantities to consumers as the business for which a license is required; and, taking the law as a whole, we conclude the legislature

did not intend to depart from the former policy of the state and require licenses for any but the retail trade."

The act of 1887, with its various amendments (G. S. 1894, §§ 1990–1993) applies only to the sale of intoxicating liquors in quantities of less than five gallons—that is, to the retail liquor business; and an examination of the subsequent legislation discloses nothing which leads us to think that there has been any change of policy. The evident object of the statute under consideration is to prohibit sales in small quantities, and this intention is expressed in the first section of the act. By disregarding the word "not" in section 2 the provisions are thus made consistent, and the entire statute is brought into harmony with the general policy of the state.

The other ground assigned for reversal is that the act is unconstitutional, in that it is in conflict with section 1, article 3, of the state constitution, which reads as follows:

> The powers of the government shall be divided into three distinct departments, legislative, executive and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this constitution.

The construction and application of this provision of the constitution has been frequently before this court. Sanborn v. Commissioners of Rice County, 9 Minn. 258 (273); In re Application of Senate, 10 Minn. 56 (78); Home Ins. Co. v. Flint, 13 Minn. 228 (244); Rice v. Austin, 19 Minn. 74 (103); State v. Young, 29 Minn. 474, 9 N. W. 737; State v. Ueland, 30 Minn. 29, 14 N. W. 58; State v. Simons, 32 Minn. 540, 21 N. W. 750; Foreman v. Board of Co. Commrs. of Hennepin County, 64 Minn. 371, 67 N. W. 207; McGee v. Board of Co. Commrs. of Hennepin County, 84 Minn. 472, 477, 86 N. W. 6; State v. Crosby, 92 Minn. 176, 99 N. W. 636. As a general proposition of law the legislature cannot delegate legislative powers to the judiciary or require the judges of the various courts of the state to do any acts which are not in their nature judicial. Kilbourn v. Thompson, 103 U. S. 168, and cases there cited; Case of Supervisors of Election, 114 Mass. 247; State v. Barker, 116 Iowa, 96, 89 N. W. 204.

But it is not always easy to discover the line which marks the distinction between executive, judicial, and legislative functions, and when duties of an ambiguous character are imposed upon a judicial officer any doubt will be resolved in favor of the validity of the statute, and the powers held to be judicial. Foreman v. Board of Co. Commrs. of Hennepin County, supra. In many instances the acts which are to be done require the performance of functions, some of which are judicial and others legislative or executive, and these are often so interwoven and connected that they cannot readily be separated and distinguished. When this is the case the court will not attempt to unravel the combination, but will sustain the act as against the constitutional objection. McGee v. Board of Co. Commrs. of Hennepin County, supra; State v. Crosby, supra.

In State v. Crosby, where the constitutionality of the ditch law was sustained, Justice Brown said: "The authorities are numerous sustaining statutes which impose upon the courts powers involving the exercise of both judicial and legislative functions, such as the condemnation of land for public purposes, the appointment of commissioners of election in proceedings for adding territory to municipal corporations, and laying out and establishing highways. The proceedings provided for by the statute under consideration involve the exercise of both legislative and judicial powers. The question of the propriety or necessity of public ditches to drain marshy or overflowed lands is one of legislative character. The condemnation of land through which such ditches may be constructed, the assessment of damages, and the determination of the legal rights to parties affected, are judicial. The exercise of all these powers is involved in proceedings under this statute."

Some confusion in the authorities has resulted from the unwarranted assumption that all the functions of government must necessarily be either executive, legislative, or judicial in their nature, and therefore referred by the constitutional provision to one or the other of the three departments of government. It may very well be true that the duty imposed by a statute such as the one under consideration is neither the one nor the other. The constitution has referred legislative power to the legislature, executive power to the executive, and judicial power to the judiciary; but it has nowhere declared that all the powers which are necessary for the proper government of the commonwealth are in-

cluded in this classification. Analyzing the constitutional provision, we find it consists of (1) a distributive clause, "The powers of government shall be divided into three distinct departments, legislative, executive and judicial;" (2) a prohibitive clause, "No person or persons belonging to, or constituting one of these departments shall exercise any of the power properly belonging to either of the others;" and (3) an exception clause, "Except in the instances expressly provided in this constitution." The constitution does not attempt to make an abstract distribution of governmental functions. It merely assigns such as are of recognized character to the departments which are created by it for their convenient and effective exercise.

The theory of the distribution of governmental functions is certainly as old as Aristotle (Politics, bk. 6, c. 11, § 1), and has been a controlling principle and accepted doctrine of political science since it was elaborated by Montesquieu in his Spirit of Laws. The belief in its importance was never stronger than during the latter part of the century, when our national constitution was formed and the government established. See 1 Blackstone, Com. 146, 154 (Hammond's Ed. p. 362, 371); 2 Woolsey, Pol. Sci. p. 259; Maine, Pop. Gov. 219; Montesquieu, Spirit of Laws (Nugent's Trans.) book 11, c. 6; The Federalist, Nos. 47, 48, 51. But the founders were too intensely practical to be controlled by any political theory, and, while they recognized the principle in constructing the framework of the government, they violated it in practice and so distributed the powers as to create a system of checks and balances. See Mason, Veto Power. The principle formulated by Montesquieu still lies at the base of most political organizations of the present day, but during the last century the tendency of political science has been to discard it in its extreme form, because, as said by Goodnow, "It is incapable of accurate statement, and because it seems to be impossible to apply it with beneficial results in the formation of any concrete political organization. The flaw in Montesquieu's reasoning and in that of his followers was in the assumption that the expressions of the governmental power by different authorities were different powers." Goodnow, Adm. Law, 20, 21. The recent tendency of legislatures and courts is commented on by Justice Brown in State v. Crosby, supra. The present attitude of the courts towards questions arising under this constitutional provision is well expressed by the Supreme

Court of North Carolina: "While * * * the executive, legislative, and supreme judicial powers of the government ought to be forever separate and distinct, it is also true that the science of government is a practical one. Therefore, while each should firmly maintain the essential powers belonging to it, it cannot be forgotten that the three co-ordinate parts constitute one brotherhood, whose common trust requires a mutual toleration of the occupancy of what seems to be a 'common because of vicinage' bordering on the domains of each." Brown v. Turner, 70 N. C. 93, 102.

It is well to recognize the fact that "there are a multitude of governmental duties which have never been and cannot possibly be performed either by the legislature or by the governor, and which are certainly not prescribed by the constitution to the judiciary." Paul v. Gloucester, 50 N. J. L. 583, 611, 15 Atl. 284; Bluntschli, Theory of the State, c. 7. The constitutional provision has no application to acts of this character. It applies only to the powers which because of their nature are assigned by the constitution itself to one of the departments exclusively. Ross v. Board, 69 N. J. L. 291, 55 Atl. 310; Eckert v. Perth Amboy, 66 N. J. Eq. 437, 57 Atl. 438. The powers not thus assigned remain properly under the control of the legislature. As said by Black: "There may be cases in which a particular power cannot be said to be either executive, legislative, or judicial; and if such a power is not by the constitution unequivocally intrusted to either the executive or judicial departments of the government, the mode of its exercise and the agency must necessarily be determined by law—that is, by the legislature." Black, Const. Law, 74. See also Cooley, Const. Lim. (2d. Ed.) 42, 43; McClain, Const. Law in United States, § 24; Bridges v. Shallcross, 6 W. Va. 562; Field v. People, 2 Scam. 79; People v. Hurlbut, 24 Mich. 44, 63.

An examination of the authorities in this country suggests the thought that in some instances the courts have assumed that the separation of the powers of government into three classes results from the application of a natural, instead of a conventional, rule. Such a theory leads to strained and artificial reasoning, and induces a system of construction which denies proper force and effect to the constitutional provision. If the powers which are conferred upon the judge of the district court and the chairman of the board of county commissioners by

the act under consideration are neither necessarily executive, legislative, nor judicial, the act is not in violation of section 1, article 3, of the constitution of the state. The same conclusion follows, under the previous decisions of this court, if the acts to be performed are of an ambiguous character, or are in part judicial and in part executive or legislative. We therefore hold that chapter 346, p. 626, of the Laws of 1905 is effective and constitutional.

The order appealed from is affirmed, and it is ordered that the relator be remanded to the custody of the respondent.