## STATE v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

### February 15, 1918.

### No. 20,567.

**Criminal law — unlicensed drinking place — conviction not sustained by evidence.**

> The evidence is *held* not to sustain a conviction for keeping an unlicensed drinking place in violation of G. S. 1913, § 3169.

Defendant appealed to the district court for Clay county from a judgment of a justice of the peace. The appeal was heard before Nye, J., who affirmed the judgment of the justice. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*C. W. Bunn* and *D. R. Frost,* for appellant.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *C. G. Dosland,* County Attorney, for respondent.

[1]Reported in 166 N. W. 351.

Dibell, C.

Appeal from a judgment of the district court of Clay county affirming a judgment of a justice of the peace finding the defendant guilty of keeping an unlicensed drinking place, heard in the district court on appeal on questions of law alone.

One Cederberg, an employee of the defendant railway company, was in charge of the office in its freight depot at Moorhead. It is through his acts that it is sought to charge the defendant. At the time of the filing of the complaint a search warrant was issued by the justice pursuant to G. S. 1913, § 3172, which authorizes it when the charge is the keeping of an unlicensed drinking place. Considerable quantities of intoxicating liquors were found. There was evidence, disputed on behalf of the defendant, tending to show that liquors came to the defendant's depot consigned to fictitious persons; that one Smith, who operated a taxi line in Fargo, came to the depot and got liquor for those who sent him for it; that customarily, though not always, he took the particular brand which was desired regardless of who was the consignee; that sometimes Cederberg directed him what to take and sometimes he did not; that he paid Cederberg the price, it apparently being consigned c. o. d., and charged for the delivery; that sometimes he signed receipts and sometimes he did not; that he did not have orders from the consignees; that he did not assume to represent them, and that in taking the liquor there was a substantial disregard by him and Cederberg of the nominal consignees. We are not more definitely informed of the arrangement under which the liquors came to Moorhead.

The complaint charges the commission of the offense of keeping "an unlicensed drinking place." G. S. 1913, § 3169. Public drinking places are defined as "saloons, public bars, and other places of business or public resort where liquor is commonly sold in quantities less than five gallons, or to be drunk on the premises." G. S. 1913, § 3162. This evidently contemplates licensed drinking places. Other sections in the immediate connection regulate the conduct of drinking places, their closing at stated times, the posting of a license, etc. The term "unlicensed drinking place" is not defined.

Sales in quantities less than five gallons, or in any quantity to be drunk upon the premises, without a license, are forbidden. G. S. 1913

§ 3109, et seq. No so-called sale is shown to have been of a less quantity than five gallons, nor to be drunk on the premises. The term "unlicensed drinking place," though not defined, is evidently used in contrast with a licensed drinking place which is regulated in the immediately preceding sections. It is settled that under our intoxicating liquor legislation a license is only required of retailers, and that the quantity of five gallons is the determining quantity, and that those who sell in that or greater quantities are not required to procure a license. They may, unless a particular statute forbids, without offense be unlicensed sellers. This has been the practical construction of our statutes from the beginning. We need only cite the cases. State v. Sullivan, 117 Minn. 329, 135 N. W. 748; State v. Minnesota Club, 106 Minn. 515, 119 N. W. 494, 20 L.R.A.(N.S.) 1101; State v. Bates, 96 Minn. 110, 104 N. W. 709, 113 Am. St. 612; State v. Orth, 38 Minn. 150, 36 N. W. 103; State v. Schroeder, 43 Minn. 231, 45 N. W. 149; State v. Benz, 41 Minn. 30, 42 N. W. 547. While the legislative aim has been to regulate the sale to actual consumers, the means adopted as the most effectual has been the prohibition of sales in less quantities than five gallons without a license. State v. Benz, 41 Minn. 30, 42 N. W. 547; State v. Schroeder, 43 Minn. 231, 45 N. W. 149.

Within the meaning of the statute an unlicensed drinking place was not conducted in the defendant's depot.

In one of the briefs reference is made to the county option law. Laws 1915, p. 24, c. 23. It may be that the acts of the defendant offended section 13 of this act, which in comprehensive terms prohibits dealing in intoxicating liquor in any quantity in dry territory. The question is not of practical importance here. The state does not ask to sustain the conviction as for a violation of the local option act. The prosecution is not under that act; besides the violation of the act carries a punishment of both fine and imprisonment which puts the offense which the act defines beyond the jurisdiction of the justice of the peace.

We have assumed that the act of Cederberg, if in itself criminal, was the criminal act of the defendant though it was not connected with it except by relation. The question is not argued.

Judgment reversed.